IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

WELLS FARGO BANK, N.A.,              *

    Plaintiff,                      *

vs.                                 *

                                                CASE NO. 4:12-CV-140 (CDL)

AVERETT  FAMILY  PARTNERSHIP, *
LLLP, GERALD C. AVERETT, and
REBECCA H. AVERETT,                 *

    Defendants.                     *

_____

O R D E R

Plaintiff Wells Fargo Bank, National Association ("Wells Fargo"), as assignee, seeks to recover on five loans made to Defendant Averett Family Partnership, LLLP ("AFP"), which were personally guaranteed by Defendants Gerald Averett and Rebecca Averett and which Wells Fargo claims are in default. Defendants contend that they extended the maturity dates on the loans pursuant to the loan agreements, and therefore, they were not in default when Wells Fargo attempted to exercise its rights to declare the loans in default, accelerate the indebtedness, and foreclose on the collateral.  Defendants assert counterclaims for breach of contract, breach of implied covenant of good faith and fair dealing, wrongful acceleration of debt, wrongful attempted foreclosure, fraud, and negligent misrepresentation. Defs.' 1st Am. Counterclaims, ECF No. 24 [hereinafter Am.

Counterclaims].  Now pending before the Court is Wells Fargo's Motion to Dismiss Counts II Through VII of Defendants' First Amended Counterclaims (ECF No. 30), which seeks to dismiss all of Defendants' counterclaims except for the breach of contract claim.  For the following reasons, the Court denies the motion as to the breach of implied covenant of good faith claim and grants the motion as to Defendants' counterclaims for wrongful acceleration of debt, wrongful foreclosure, fraud, and negligent misrepresentation.

MOTION TO DISMISS STANDARD

When considering a 12(b)(6) motion to dismiss a counterclaim, the Court must accept as true all facts set forth in the counterclaim and limit its consideration to the pleadings and exhibits attached thereto. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009).  "To survive a motion to dismiss, a [counterclaim] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  The counterclaim must include sufficient factual allegations "to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  "[A] formulaic recitation of the elements of a cause of action will not do[.]"  *Id.*  Although the counterclaim must contain factual

allegations that "raise a reasonable expectation that discovery will reveal evidence of" the claims, *id.* at 556, "Rule 12(b)(6) does not permit dismissal of a well-pleaded [counterclaim] simply because 'it strikes a savvy judge that actual proof of those facts is improbable,'" *Watts v. Fla. Int'l Univ.,* 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly,* 550 U.S. at 556).

FACTUAL BACKGROUND

Accepting all of Defendants' factual allegations as true, and construing all reasonable inferences in their favor, the facts are as follows.

Five promissory notes for loans made by Regions Bank, N.A. to AFP have been assigned to Wells Fargo. Gerald Averett and Rebecca Averett are the general partners of AFP, and they personally guaranteed the loans.

Prior to the assignment of the loans to Wells Fargo, AFP executed a First Consolidated Amendment on March 31, 2010 under which Regions Bank agreed to modify the maturity dates of three of the loans to April 5, 2011. On April 5, 2011, Defendants and Regions Bank executed a Second Consolidated Amendment and Agreement. That agreement extended the maturity date to April 5, 2012 and entitled AFP to exercise an option to extend the maturity dates of the notes for an additional six months:

> Extension Option. Borrower shall be entitled to extend the maturity date of the Notes for one (1) six month period (the "Extension Period") upon written

3

request . . . provided that the following terms and conditions are satisfied as of the first day of the Extension Period:

(a) Each of the Notes is being so extended, or otherwise paid in full on its maturity date, and no breach, default, Default or Event of Default shall exist under any of the Notes or under any of the other Loan Documents;

(b) The Debt Service Coverage Ratio (as defined below) shall be no less than 1.15 to 1;

(c) Borrower shall have executed such supplemental documentation as Lender may reasonably require in order to evidence extension of the maturity date and to preserve the security of Lender pursuant to the Security Instruments and the other Loan Documents and shall have paid all costs and expenses incurred in connection therewith and provided extended title insurance coverage as required by Lender at such time; and

(d) Upon extension of the maturity date of the loan, each such Note as so extended, shall be payable in the same manner as set forth therein.

"Debt Service" shall mean (i) the fixed monthly payment of principal and interest that would be necessary to fully amortize the total outstanding principal balance of all of the Notes being extended (calculated by Lender as of the date of such extension) in three hundred sixty (360) months, assuming an annual interest rate equal to the five percent (5.0%), multiplied by (ii) twelve (12).

"Debt Service Coverage Ratio" shall mean the ratio obtained by dividing Net Revenue by Debt Service;

"Net Revenue" shall mean (i) the aggregate of all gross receipts, income, revenues, rents, issues and profits, and all proceeds thereof, derived from all of the premises, secured by the Security Instruments securing such Notes to be extended, or any portion thereof received by Borrower from the use, occupancy, leasing, management, operation or control of, or otherwise arising out of, the premises or any portion

thereof, including, without limitation, all rent and
other sums paid under the tenant, space, storage or
other occupancy leases and agreements from leases in
place as of March 31 of such year (excluding, however,
security or other deposits and any lease buyouts or
extraordinary payments), annualized over a twelve (12)
month period, less (ii) (a) actual bona fide normal,
customary and reasonable operating expenses for the
previous calendar year ending December 31 actually
paid during such year.

Compl. Ex. 38, Second Consolidated Amendment & Agreement ¶ 1(d),
ECF No. 1-38. Defendants paid additional consideration for the
inclusion of the Extension Option.

AFP exercised the Extension Option by letter dated March 5,
2012 sent to Wells Fargo, which had been assigned the notes by
that time. On April 2, 2012, counsel for Wells Fargo
acknowledged receipt of the letter and requested that AFP send
it more information. AFP's counsel responded to Wells Fargo's
letter and provided the requested documents related to the
extension. AFP continued making timely payments in compliance
with the terms of the notes, but Wells Fargo, apparently
unconvinced that Defendants had effectively exercised the option
to extend the maturity date for the loans, refused to apply
these payments to the respective balances.

Defendants allege that during the extension period and
without cause, Wells Fargo notified them on April 11, 2012 that
they were in default and that it was accelerating the entire
debt pursuant to the loan agreements. In the notice, Wells

Fargo claimed that Defendants did not provide the requested documentation for the maturity date to be extended. Wells Fargo also began foreclosure proceedings against some of Defendants' properties located in Florida, which were collateral securing the obligations under the notes. Those proceedings made public Wells Fargo's intent to foreclose on those properties in Florida, and those publications allegedly "contained untrue and inaccurate information related to the loan and Defendant[s]." Am. Counterclaims ¶ 26.

Defendants claim they suffered damages from these actions amounting to at least $10,000,000.00.

DISCUSSION

In support of their counterclaims, Defendants allege that Wells Fargo breached the terms of the Second Consolidated Amendment and Agreement ("the Agreement"), which contained the Extension Option, when it declared them in default, accelerated the indebtedness due under the notes, and commenced foreclosure proceedings, even though Defendants had exercised their option to extend the maturity date for the loans. Am. Counterclaims ¶¶ 10-12. Wells Fargo does not seek to dismiss this breach of contract claim at this time. In addition to this breach of contract claim, Defendants assert claims for breach of implied duty of good faith, wrongful acceleration of debt, wrongful

attempted foreclosure, fraud, and negligent misrepresentation. Wells Fargo does seek dismissal of these claims.

## I.    Breach of Implied Duty of Good Faith

Defendants allege that Wells Fargo's conduct breached the implied duty of good faith and fair dealing.  Although it is not entirely clear, it appears that Defendants contend that Wells Fargo breached this duty when it refused to honor Defendants' invocation of the right to extend the maturity date for the loans.  To the extent that Defendants allege that the terms of the maturity extension had implied within them a duty that the parties' obligations under that provision would be performed in good faith, the Court denies Wells Fargo's motion to dismiss that claim.  The Court rejects Wells Fargo's argument that this claim should be dismissed because the duties alleged by Defendants are duplicative of the duties in the Agreement, and thus, the claim is one for breach of contract.   While the breach of implied duty of good faith claim is inextricably intertwined with the breach of contract claim, it is not merely duplicative of that claim based on the present record, which is primarily limited to Defendants' factual allegations.

Georgia law imposes a "common law duty to diligently and in good faith seek to comply with all portions of the terms of a contract."  *Stuart Enters. Int'l, Inc. v. Peykan, Inc.*, 252 Ga. App. 231, 233, 555 S.E.2d 881, 884 (2001).   "The implied

covenant of good faith modifies, and becomes part of, the provisions of the contract itself. As such, the covenant is not independent of the contract." *Id.* at 234, 555 S.E.2d at 884. Thus, a plaintiff cannot prevail on a claim for breach of the covenant if the plaintiff does not prevail on its underlying breach of contract claim. *Heritage Creek Dev. Corp. v. Colonial Bank*, 268 Ga. App. 369, 374, 601 S.E.2d 842, 847 (2004); *see also Stuart Enters.*, 252 Ga. App. at 233-34, 555 S.E.2d at 883-84 (holding that like the implied covenant of good faith and fair dealing created under the Uniform Commercial Code, the common law duty does not create an independent cause of action). Moreover, "[t]here can be no breach of an implied covenant of good faith where a party to a contract has done what the provisions of the contract expressly give him the right to do." *Martin v. Hamilton State Bank*, 314 Ga. App. 334, 335, 723 S.E.2d 726, 727 (2012) (alteration in original) (internal quotation marks omitted). "'Good faith' is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties. When the contract is silent, principles of good faith . . . fill the gap." *Id.* at 335-36, 723 S.E.2d at 728 (omission in original).

8

Here, Defendants maintain that they had a contractual right to extend the maturity date of the loans for an additional six months and that they effectively exercised that right pursuant to the terms of the applicable contract.   They further contend that Wells Fargo unilaterally decided that Defendants were not entitled to extend the maturity date or that they had not complied with the conditions for obtaining an extension. Defendants allege that either it is absolutely clear that the contract terms authorized the extension, or if any of the terms are unclear, it is clear that when the implied duty of good faith is imposed upon the terms, Defendants were entitled to the six month extension.   Thus, this is not a case where the Defendants have failed to state a breach of contract claim and seek to assert a separate and independent breach of implied duty claim.   *See Stuart Enters.*, 252 Ga. App. at 234, 555 S.E.2d at 884 (holding that when a jury finds no breach of contract, a verdict for breach of the covenant of good faith in performance of that contract cannot stand because breach of the covenant cannot form an independent cause of action).

The Court finds that, at this stage, Defendants have sufficiently stated a plausible claim for breach of the implied duty of good faith.   *See, e.g.*, *DeKalb Cnty. Sch. Dist. v. Gold*, No. A12A0824, 2012 WL 5857217, at *7 (Ga. Ct. App. Nov. 20, 2012) (finding that where plaintiff sufficiently alleged a

breach of contract, "[i]t follows, then, that the trial court did not err in failing to dismiss [plaintiff]'s claims for breach of contract and for breach of the covenant of good faith and fair dealing implied therein"); *Techbios, Inc. v. Champagne*, 301 Ga. App. 592, 595, 688 S.E.2d 378, 381 (2009) (concluding that plaintiff "has adequately set forth a claim of breach of contract of the… agreement, and duties imposed by the … agreement also serve as a sufficient basis for its claim that [defendants] breached the implied covenant of good faith and fair dealing"). Accordingly, the Court denies Wells Fargo's motion to dismiss this claim. The Court is skeptical, however, of Defendants' tort claims as discussed below.

## II.  Wrongful Acceleration of Debt

In their "wrongful acceleration of debt" claim, Defendants rely on the same conduct that they allege breached the contract in support of a separate tort for "wrongful acceleration of debt." They contend that because they had the right to extend the maturity date, they were not in default and Wells Fargo had no right to accelerate the debt. This may be true, but the question is whether it gives rise to a tort claim. "It is well settled that misfeasance in the performance of a contractual duty may give rise to a tort action. But in such cases the injury to the plaintiff has been an independent injury over and above the mere disappointment of plaintiff's hope to receive the

10

contracted-for benefit." *Constr. Lender, Inc. v. Sutter*, 228 Ga. App. 405, 409, 491 S.E.2d 853, 858 (1997) (internal quotation marks omitted).   It is also well-settled that a "defendant's mere negligent performance of a contractual duty does not create a tort cause of action; rather, a defendant's breach of a contract may give rise to a tort cause of action only if the defendant has also breached an independent duty created by statute or common law." *Fielbon Dev. Co., LLC v. Colony Bank of Houston Cnty.*, 290 Ga. App. 847, 855, 660 S.E.2d 801, 808 (2008).   Therefore, "[a]bsent a legal duty beyond the contract, no action in tort may lie upon an alleged breach of [a] contractual duty." *Id.* (alterations in original) (internal quotation marks omitted).

All allegations underlying the Defendants' claim of "wrongful acceleration" asserted against Wells Fargo arise out of the Agreement, and the damages from the acceleration flow directly from that contract.   Defendants have not cited, nor has the Court found, any independent statutory or common-law requirement addressing how and when banks can accelerate loans based on default for non-payment at maturity.   Defendants cite cases finding a tort claim for wrongful acceleration based on the independent duty a lender owes pursuant to O.C.G.A. § 11-1-208 when it accelerates a loan after deeming itself insecure. *Crosson v. Lancaster*, 207 Ga. App. 404, 404-05, 427 S.E.2d 864,

866 (1993); *Mayo v. Bank of Carroll Cnty.*, 157 Ga. App. 148, 148, 276 S.E.2d 660, 661 (1981); *First Nat'l Bank of Gainesville v. Appalachian Indus., Inc.*, 146 Ga. App. 630, 632-33, 247 S.E.2d 422, 424-25 (1978).[1]  Here, just as the Court of Appeals of Georgia stated in *Martin v. Hamilton State Bank*, "[t]hose decisions are, however, distinguishable because they involved a lender accelerating a debt based on the lender having deemed itself insecure, not accelerating a debt based on a default for nonpayment."  314 Ga. App. 334, 336 n.5, 723 S.E.2d 726, 728 n.5 (2012).  The remaining case cited by Defendants, *Decatur Investments Company v. McWilliams*, 162 Ga. App. 181, 290 S.E.2d 526 (1982), addresses a claim for wrongful foreclosure and not an independent claim for wrongful acceleration.  Defendants have not established, nor has the Court discovered, the existence of an independent duty that provides them with a cause of action in tort for wrongful acceleration of debt.

---

[1] The Court also notes that Defendants' citation to *Mayo v. Bank of Carroll County* for the proposition that Georgia recognizes "wrongful acceleration" claims is misplaced for several additional reasons. First, the parties in *Mayo* did not contest whether wrongful acceleration states a cause of action, so the court did not address the issue.  157 Ga. App. at 148, 276 S.E.2d at 661.  Second, the case that the *Mayo* court cited does not establish that a separate duty exists to create a tort for wrongful acceleration in Georgia.  *See generally Sale City Peanut & Milling Co. v. Planters & Citizens Bank*, 107 Ga. App. 463, 130 S.E.2d 518 (1963) (holding that allegations involving the attempted enforcement of a power of sale created by deed and the publication of false statements of default were sufficient to "set out a cause of action good as against a general demurrer.").

The contracts between Defendants and Wells Fargo determine the conditions under which the indebtedness under the loans may be accelerated. To the extent Wells Fargo wrongfully accelerated the loans, the Defendants' remedy is in contract, not tort. Accordingly, Defendants' counterclaim for wrongful acceleration of debt is dismissed.

## III. Wrongful Attempted Foreclosure

Defendants also assert a wrongful attempted foreclosure claim based on Wells Fargo's initiating foreclosure proceedings in Florida on properties located in that state. Am. Counterclaims ¶ 25. Wells Fargo seeks dismissal of this claim, arguing that Florida substantive law applies, and Florida law does not recognize the tort of wrongful attempted foreclosure. Defendants agree that Florida does not recognize this tort, but they argue that Georgia substantive law, which does recognize the tort of wrongful attempted foreclosure, applies. Defendants argue that Georgia substantive law applies because "Defendants are Georgia residents bringing a diversity action in the Middle District of Georgia." Defs.' Second Resp. to Pl.'s Mot. to Dismiss 7, ECF No. 33.

Sitting in Georgia, the Court applies Georgia's choice of law rules. *Federated Rural Elec. Ins. Exch. v. R.D. Moody & Assocs., Inc.*, 468 F.3d 1322, 1325 (11th Cir. 2006) (per curiam). Georgia's choice of law rules apply the doctrine of

*lex loci delicti*, the traditional rule that "a tort action is governed by the substantive law of the state where the tort was committed." *Dowis v. Mud Slingers, Inc.*, 279 Ga. 808, 809, 816, 621 S.E.2d 413, 414, 419 (2005). "The general rule is that the place of the wrong, the *locus delicti*, is the place where the injury sustained was suffered rather than the place where the act was committed[.]" *Risdon Enters., Inc. v. Colemill Enters., Inc.*, 172 Ga. App. 902, 903, 324 S.E.2d 738, 740 (1984) (internal quotation marks omitted). Because the foreclosure action was filed in Florida, the affected properties are located in Florida, and the publication regarding the foreclosure and Defendants' financial condition occurred in Florida, the Court finds that Florida is the place of the act and the injury. *Cf. Triguero v. ABN AMRO Bank N.V.,* 273 Ga. App. 92, 95, 614 S.E.2d 209, 212 (2005) ("[I]n defamation cases, the law of the jurisdiction where the publication occurs determines the rights and liabilities of the parties.").[2]  Therefore, Florida law applies to Defendants' wrongful attempted foreclosure claim. Because Florida does not recognize a claim for wrongful attempted foreclosure, that claim must be dismissed. *See, e.g.,*

---

[2] Although Florida does not recognize the tort of wrongful attempted foreclosure, Georgia law instructs that the nature of the tort is akin to defamation. *See Aetna Fin. Co. v. Culpepper*, 171 Ga. App. 315, 319, 320 S.E.2d 228, 232 (1984) (stating that wrongful attempted foreclosure requires "a knowing and intentional publication of untrue and derogatory information concerning the debtor's financial condition, and that damages were sustained as a direct result of this publication").

*Raines v. GMAC Mortg. Co.*, No. 3:09-CV-00477-J-25HTS, 2009 WL 4715969, at *1-2 (M.D. Fla. Dec. 10, 2009) (concluding that a cause of action for attempted wrongful foreclosure does not exist in Florida).

## IV. Fraud

Defendants' fraud claim must also be dismissed. Defendants have failed to plead the essential elements of a fraud claim with the specificity required by the Federal Rules of Civil Procedure.

Under Georgia law, "[t]he tort of fraud has five elements: a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff." *Griffin v. State Bank of Cochran*, 312 Ga. App. 87, 90, 718 S.E.2d 35, 39 (2011) (internal quotation marks omitted). In addition to alleging the essential elements of a fraud claim, "a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). This "heightened" pleading requirement "serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir.

2001) (internal quotation marks omitted).  Of course, Rule 9(b)

"must not abrogate the concept of notice pleading." *Id.*

(internal quotation marks omitted). A proper balance between

notice pleading and the specificity required by Rule 9(b) is

struck when the complaint alleges:

> (1) precisely what statements were made in what
> documents or oral representations or what omissions
> were made, and (2) the time and place of each such
> statement and the person responsible for making (or,
> in the case of omissions, not making) same, and (3)
> the content of such statements and the manner in which
> they misled the plaintiff, and (4) what the defendants
> obtained as a consequence of the fraud.

*Id.* (internal quotation marks omitted).

Defendants base their fraud claim on general allegations

that do not specify the facts upon which the fraud is based.

Significantly, Defendants' allegations state no specific facts

showing that a false misrepresentation was made by Wells Fargo

or what that misrepresentation was.  A mere failure to comply

with the terms and conditions of a contract is not, standing

alone, fraud.  At a minimum, Defendants must specify statements

made by Wells Fargo that were knowingly false along with facts

from which a reasonable jury could conclude that Wells Fargo

knew the statements were false.  The Court does not find such

specific allegations in Defendants' counterclaim for fraud, and

therefore, it must be dismissed.

**V.   Negligent Misrepresentation**

Defendants' claim for negligent misrepresentation suffers from the same weaknesses as their fraud claim. "The essential elements of negligent misrepresentation are (1) the defendant's negligent supply of false information to foreseeable persons, known or unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance." *Marquis Towers, Inc. v. Highland Grp.*, 265 Ga. App. 343, 346, 593 S.E.2d 903, 906 (2004) (internal quotation marks omitted).

Defendants merely allege in conclusory fashion that Wells Fargo "negligently and falsely misrepresented to Defendants that they had the option to extend the maturity dates of the Loans for a six month period." Am. Counterclaims ¶ 38.   This bare assertion simply does not contain sufficient factual matter to state a claim that is plausible on its face.   Therefore, Defendants' negligent misrepresentation claim must be dismissed.

CONCLUSION

For the abovementioned reasons, the Court denies Wells Fargo's motion to dismiss (ECF No. 30) as to Defendants' counterclaim for breach of implied covenant of good faith and fair dealing.   The Court grants the motion as to Defendants' counterclaims for wrongful acceleration of debt, wrongful foreclosure, fraud, and negligent misrepresentation.   Wells

Fargo's previous motion to dismiss AFP's counterclaims (ECF No. 20) is rendered moot by this Order.

        IT IS SO ORDERED, this 28th day of December, 2012.

                                    S/Clay D. Land
                                    CLAY D. LAND
                              UNITED STATES DISTRICT JUDGE